# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
## No. 21-60V

|  |  |
|---|---|
| PERRY WALTERS, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: August 26, 2025 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Johnathan Svitak, Shannon Law Group, P.C., Woodridge, IL,* for Petitioner.

*Catherine Elizabeth Stolar, U.S. Department of Justice, Washington, DC,* for Respondent.

## ENTITLEMENT DECISION[1]

On January 5, 2021, Perry Walters filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that following his receipt of an influenza ("flu") vaccine on October 3, 2019, he suffered a right shoulder injury related to vaccine administration ("SIRVA"). Petition (ECF No. 1) at 1. The case was assigned to the Special Processing Unit ("SPU") of the Office of Special Masters.

For the foregoing reasons, I determine that Petitioner is not entitled to compensation for a SIRVA Vaccine Injury Table ("Table") claim. Petitioner has also not

---

[1] Because this decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

plead or otherwise stated a cognizable causation-in-fact claim. Respondent's motion to dismiss the Petition is therefore **granted**.

## I.    Relevant Procedural History

On March 7, 2022, the case was assigned to the SPU. ECF No. 16. On June 21, 2023, an initial status conference was held. Petitioner then filed additional evidence and medical records. Respondent represented that he intended to defend this case and filed a Rule 4(c) Report on August 31, 2023. ECF No. 22 (Rule 4(c) Report). Respondent also filed a separate motion to dismiss, referencing the Rule 4(c) Report, on August 31, 2023. ECF No. 23.

In the Rule 4(c) Report, Respondent opposed the Table SIRVA claim on two grounds. First, Respondent argued that Petitioner had failed to establish that he received the October 3, 2019 vaccination in his right arm, because the certified pharmacy record indicated administration in the left arm. Rule 4(c) Report at 8. Second, Respondent argued that Petitioner could not establish onset of his right shoulder pain within 48 hours of vaccination, because he waited nearly four months to seek treatment and then informed his treaters that his symptoms began in December 2019. *Id.* at 9-11.

On September 20, 2023, I ordered the parties to brief these issues. EFC No. 25. On November 20, 2023, Petitioner filed motion for a ruling on the record. ECF No. 29 (Pet'r Mot.). Petitioner filed additional medical records and a supplemental affidavit. ECF No. 28. On January 9, 2024, Respondent filed a combined reply in support of his motion to dismiss and response to Petitioner's motion for a ruling on the record. ECF No. 32 (Resp't Opp'n). On January 23, 204, Petitioner filed a reply in support of his motion for a ruling on the record. ECF No. 33 (Pet'r Reply). This matter is ripe for adjudication.

## II.    Relevant Evidence

I have reviewed all of the evidence filed to date. I will only summarize or discuss evidence that directly pertains to the determinations herein, as informed by the parties' respective citations to the record and their arguments.

### A.    Petitioner's Vaccination and Subsequent Treatment

Petitioner was 54 years old at the time of vaccination and employed as an HVAC technician. Ex. 1 at 1. In the months prior to his vaccination, Petitioner established care at Copperfield Family Medicine and was treated for hypertension, but otherwise did not have any ongoing medical complaints. *See* Ex. 3 at 6-9, 11-12. Petitioner noted that he had not had a physical exam since early 2018. *Id.* at 6.

On October 3, 2019, Petitioner received a flu vaccine at a Walgreens pharmacy. Petitioner filled out and signed a Vaccine Administration Record ("VAR") and informed consent form. Ex. 11 at 4-5. The Walgreens pharmacist filled out the VAR as follows:

| Section F - Complete AFTER Vaccine Administration | | | | | | |
| Vaccine | NDC | Manufacturer | Dosage | Site Of Administration (eircle site) | VIS published date |
| FLUARIX Qiv PFS 2019-2020 INJ 0.5ML | 58160-0896-52 | GLAXO SMITH KLINE | 0.5 Ml | L  R  Deltoid IM | 06/15/2019 |

Immunizer Name (print): *Lynette Johnson*   Immunizer Signature: _____   Title: *RPH*

If applicable, intern name (print): *Joo Hee Kim*   Administration Date: 10/3/19   Date VIS given to patient: 10/3/19

*Id.* at 5. This document was produced and certified by a Walgreens custodian of records. *Id.* at 2.

However, Petitioner also filed an undated, uncertified "Immunization Services School Immunization Notification Form" ("School Immunization Form"). Ex. 9 at 1. This document appears to have been filled out and signed by a different Walgreens pharmacist with Petitioner's name, birthdate, and product information about the October 3, 2019 vaccination. *See id.* In contrast to the VAR, the person who filled out this form checked a box indicating that Petitioner received the flu vaccine in his *right* deltoid. *Id.*

After vaccination, Petitioner did not obtain any further medical treatment until January 24, 2020, when he saw orthopedist Dr. Doan Khac Nguyen for right shoulder pain and decreased range of motion. Ex. 4 at 8. In the notes from this exam, Dr. Nguyen wrote, "55 y/o male with [past medical history] of [hypertension] and [h]yperlipidemia. His work involved a lot of over head lifting, carrying tools on his shoulder. *Pain since 12/22/2019*. No obvious trauma. Plan Physical Therapy and [non-steroid anti-inflammatory drug]."[3] *Id.* (emphasis added). Petitioner also answered "don't know" to an intake form question as to what caused his pain or injury and "12/22/2019" to the question of when his pain started. *Id.* at 10. Dr. Nguyen took an x-ray, which was unremarkable, and diagnosed Petitioner with adhesive capsulitis, bursitis, and impingement syndrome of the right shoulder. *Id.* at 8.

Petitioner returned to Dr. Nguyen on February 24, 2020 for a follow-up appointment. *Id.* at 6. Petitioner reported some improvement in his right shoulder, but still was experiencing pain at night and with motion. *Id.* Dr. Nguyen administered a steroid injection and recommended that Petitioner perform home exercises. *Id.*

On March 23, 2020, Petitioner had another appointment with Dr. Nguyen. *Id.* at 4. Dr. Nguyen again noted that Petitioner had "persistent pain since 12/22/2019" and that

---

[3] It does not appear that Petitioner ever pursued physical therapy.

his work involved a lot of overhead lifting and carrying tools on his shoulder. *Id.* Petitioner's shoulder had improved, but he still had pain, especially when reaching back. *Id.* Dr. Nguyen wrote that they would continue with conservative treatment with a follow up in six months or as needed. *Id.*

On April 17, 2020, Petitioner was examined by an orthopedist at a different practice, Dr. Drew Fehsenfeld. Ex. 5 at 14. Dr. Fehsenfeld recorded Petitioner's chief complaint as pain in his right shoulder and specified that Petitioner "was injured on 12/23/2019." *Id.* Petitioner reported that "he began having shoulder pain and restricted range of motion in December 2019." *Id.* at 15. Dr. Fehsenfeld also wrote that the duration of Petitioner's symptoms was "4 months." *Id.* at 14. Dr. Fehsenfeld found Petitioner's symptoms to be consistent with adhesive capsulitis. *Id.* at 16.

At this appointment, Dr. Fehsenfeld took x-rays, which did not reveal any abnormality, and suggested that Petitioner try a home stretching program. *Id.* Dr. Fehsenfeld also believed that Petitioner could benefit from physical therapy if he did not improve over the next few weeks. *Id.* Petitioner was to return in three weeks for a follow-up, but it does not appear that he saw Dr. Fehsenfeld again.[4] *See id.*

Included in this set of records from Dr. Fehsenfeld's office is a single page of handwritten notes in diary format. *See id.* at 11. In particular, the notes stated, "12-17-19 – shot rifles – rode ATV – no pain" and "12-23-19 – noticed rt shoulder hurts when raised." *Id.* Other entries on this page described Petitioner's previous appointments with Dr. Nguyen. *Id.* It is unclear whether Petitioner or Dr. Fehsenfeld created these notes.

On April 29, 2020, Petitioner saw chiropractor Dr. David Chiriboga. Ex. 13 at 4. Similar to what he told his other treaters, Petitioner reported that he "started feeling right shoulder pain approximately four months ago." *Id.* Dr. Chiriboga recommended that Petitioner return two times per week for the next four weeks, *id.* at 5, but he did not seek further chiropractic treatment.

The final medical record filed by Petitioner is from five months after his appointment with Dr. Chiriboga, when Petitioner returned to Dr. Nguyen on September 16, 2020. Ex. 4 at 2. Petitioner stated that his shoulder pain was 80% better and he did not feel that he needed to come back. *Id.* At this appointment, for the first time, Petitioner made a different statement about onset. Dr. Nguyen wrote that Petitioner "attributed rt shoulder pain and stiffness due to flu shot on 10/3/2019." *Id.* Petitioner did not seek any further medical care for his right shoulder.

---

[4] On April 21, 2020, a colleague of Dr. Fehsenfeld prescribed Petitioner oral steroids, although Petitioner did not return for another appointment. *See* Ex. 5 at 13.

### B.    Affidavit Evidence

Petitioner filed his first affidavit with the Petition. Petitioner stated in it that he received the October 3, 2019 flu vaccine in his right arm, and that he began to experience pain and restrictions in his range of motion the next day. Ex. 1 at 2. Petitioner recounted that he was at work on October 4, 2019 and that the pain was so severe that he asked his supervisor if he could be excused for the rest of the day. *Id.* Petitioner asserted that he needed to take vacation or sick leave due to the "disabling" pain in his right shoulder on October 11, 2019, November 1-5, 2019, December 9, 2019, December 20, 2019, February 21, 2020, March 20, 2020, April 2, 2020, April 16, 2020, and also on various other unspecified dates between April 29, 2020 and September 2020. *Id.* at 3-4. Regarding his first appointment with Dr. Nguyen, Petitioner explained that he "could not remember when [his] right shoulder pain first began," but told Dr. Nguyen "that it increased in severity in December of 2019." *Id.* at 2.

Petitioner's supervisor, Justin Lonzo, provided an affidavit dated December 21, 2020. Ex. 6 at 1. Mr. Lonzo stated that on October 4, 2019, Petitioner reported right shoulder pain "that began after he received an influenza vaccine the day before" and requested to leave early. *Id.* at 2. Mr. Lonzo also stated that, "in the weeks following October 3, 2019," he observed that Petitioner had less strength to pick up heavy items and less stamina due to his right shoulder issues, which prevented Petitioner from performing all of his job duties. *Id.*

Petitioner also filed an affidavit from Estella Cruz, who works with him as a dispatcher, dated December 21, 2020. Ex. 7 at 1. Ms. Cruz stated that on October 4, 2019, Petitioner reported that he was having right shoulder pain that was impacting his job duties and that this had started ever since he had received the flu vaccine the day before. *Id.* at 2. Ms. Cruz further stated that Petitioner requested a half-day of work on October 4, 2019 and she "entered a note into our electronic work call records to reflect that Petitioner had left work due to pain in his shoulder." *Id.* Ms. Cruz also observed, over the next few weeks, that Petitioner had difficulties performing his regular work. *Id.*

On March 2, 2022, Petitioner filed an affidavit from his wife, Camille Walters. Ex. 10 at 1. Ms. Walters stated that she went with Petitioner to Walgreens on October 3, 2019 and recalled observing that Petitioner received the vaccine in his right arm, whereas she received it in her left arm. Ms. Walters also observed that Petitioner came home early on October 4, 2019 and that he told her that it was due to pain in his shoulder. *Id.* Ms. Walters explained that after the vaccination, she saw Petitioner in a "great amount of pain that worsened each day," but he did not go to the doctor until the pain became "unbearable."

*Id.* at 2. Ms. Walters concluded that she believed that Petitioner would have shoulder issues "for the rest of his life." *Id.*

On July 21, 2023, Petitioner filed a digital photograph of a hard copy document entitled "2019 Employee Attendance Calendar." Ex. 12 at 1. The header of the document is a printed list of "absence codes," a list of reasons for absences, and space for information about the employee. *See id.* The header is filled out with Petitioner's name and employee number in pencil. *See id.* The body of the document contains a small calendar for each month of 2019. *See id.* There are certain days marked in pencil, presumably to indicate days that Petitioner was absent from work, using the "absence codes," such as "V" for vacation. *See id.* An unknown person highlighted October 4, 2019 in yellow. *See id.* The date of October 4, 2019 has the handwritten notation "HDS" and the words "*HDS Half Day Sick" have been handwritten at the bottom of the page. *See id.* There are no dates indicating for when any of the information was filled in.

After Respondent filed his August 31, 2023 Rule 4(c) Report, Petitioner filed a second affidavit. Ex. 14 at 1. In it, Petitioner provided more details about the administration of the flu vaccine on October 3, 2019. Petitioner stated that he is right-hand dominant, and was told to receive the vaccine in his dominant arm to reduce soreness. *Id.* Petitioner also explained that he has a tattoo with a heart on his right shoulder and that he remembered the pharmacist positioning the vaccine over the tattoo and discussing that she would inject it into the heart design. *Id.*

As in his first affidavit, Petitioner stated that after October 4, 2019, his shoulder continued to be intermittently sore, but it worsened significantly in December 2019. *Id.* at 2. According to Petitioner, when he first saw Dr. Nguyen, he was not aware of the possibility of a SIRVA and thus did not think to relate to his issue to the flu vaccine when asked how and when his symptoms began. *Id.* at 2-3. Petitioner provided the same explanation for why he also told Dr. Fehsenfeld that his pain began in December 2019. *Id.* at 3. Further, Petitioner stated that in "Fall 2020," he began to investigate whether the vaccines could have caused a shoulder injury, leading to his discovery of SIRVA and his attribution of his symptoms to the vaccine at the September 16, 2020 appointment with Dr. Nguyen. *Id.*

In his second affidavit, Petitioner explained the provenance of Exhibit 9, the Walgreens School Immunization Form. *Id.* at 4. Petitioner returned to the same Walgreens and requested a vaccine record from the pharmacist. *Id.* Apparently, the

pharmacist could not produce the original record, but instead filled out a new form for Petitioner with the "corrected site of vaccination."[5] *Id.*

### III.    Petitioner's Table SIRVA Claim Warrants Dismissal

#### A.    Legal Standard for SIRVAs

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Section 11(c)(1). A petitioner may prevail on his claim if he has "sustained, or endured the significant aggravation of any illness, disability, injury, or condition" set forth in the Table. Section 11(c)(1)(C)(i). If a petitioner establishes a Table injury, causation is presumed.

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. In *Lowrie*, the special master wrote that "written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Id.* at *19. The United States Court of Federal Claims has recognized that "medical records may be incomplete or inaccurate." *Camery v. Sec'y of Health & Human Servs.*, 42 Fed. Cl. 381, 391 (1998). And the Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery*, 42 Fed. Cl. at 391 (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec.

---

[5] Petitioner did not state when he obtained the School Immunization Form. However, he did state that he provided this form to his attorney. *See* Ex. 14 at 4.

Mstr. June 30, 1998)). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993). The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Human Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). A SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

> (ii) Pain occurs within the specified time frame;

> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g., NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B.    Petitioner Has Not Established Situs With Preponderant Evidence

Petitioner filed two pharmacy records, the VAR and School Immunization Form, that identify different sites of administration. In opposing entitlement, Respondent argues that the VAR is inherently more reliable and trustworthy than the School Immunization Form. Rule 4(c) Report at 8; Resp't Opp'n at 3. In response, Petitioner champions the School Immunization Form and presents it as a corrected vaccination record. Pet'r Mot. at 6-10; Pet'r Reply at 3.

Respondent has the far better argument. As Respondent points out, the VAR was created contemporaneously with vaccine administration, required the pharmacist to manually circle a specific notation for the left arm, and was signed by Petitioner. Rule 4(c) Report at 8. Unlike the School Immunization Form, the VAR was also certified by Walgreens as a true and correct business record. Ex. 11 at 2. These characteristics warrant significant weight and provide substantial and reliable evidence that the VAR correctly stated the site of administration as Petitioner's left arm. *See Schmidt v. Sec'y of Health & Hum. Servs.*, No. 17-1530V, 2021 WL 5226494, at *8 (Fed. Cl. Spec. Mstr. Oct 7, 2021); *Marion v. Sec'y of Health & Hum. Servs.,* No. 19-0495V, 2020 WL 7054414, at *8 (Fed. Cl. Spec. Mstr. Oct. 27, 2020).

By contrast, I give the School Immunization Form little weight. This document is undated, uncertified, and was not (contrary to Petitioner's characterization) created as a correction to the VAR. Rather, Petitioner has acknowledged that the School Immunization Form was produced at his request -- well after vaccination and after he had already come to the conclusion that he had suffered from a SIRVA. *See* Ex. 14 at 4. There is no evidence that the pharmacist on duty that day who completed this form had any independent, personal knowledge that Petitioner had actually received the vaccine in his right arm. Indeed, even the purpose of this document to list immunizations for schoolchildren demonstrates that it cannot be considered as a substitute for the original VAR. Considering the entirety of the record and the problems with the School Immunization Form, I do not find that the original VAR is ambiguous, incomplete, or unreliable. *See* Pet'r Mot. at 6, 9.

Further, I do not agree that this represents a case in which the VAR is inconsistent with Petitioner's medical records. *See id.* at 7. Petitioner relies on a list of cases in which

Case 1:21-vv-00060-UNJ    Document 40    Filed 09/25/25    Page 10 of 13

other Vaccine Act claimants provided sufficient evidence to rebut a vaccine record that indicated administration in the "wrong arm."[6] *Id.* at 8. But these cases involved petitioners who reported to their treaters, generally within a short time period, that they were suffering from a distinct shoulder pain that began immediately after vaccination in that arm. The petitioners in these cases also provided copious information about situs for the purpose of obtaining medical care, and did not only point to affidavit statements.[7]

Here, Petitioner's medical records do not cast doubt on the VAR's accuracy, and do not create any ambiguity as to situs. Petitioner did not initially reference the flu vaccine at all when complaining of shoulder pain. *See* Ex. 4 at 4, 6, 8; Ex. 5 at 14; Ex. 13 at 4. Although Petitioner did later attribute his right shoulder pain to the flu vaccine at the September 16, 2020 appointment (*see* Ex. 4 at 2), his affidavit makes clear that by this point he had already researched SIRVA and sought to document this topic with Dr. Nguyen. *See* Ex. 14 at 3. Petitioner thus did consistently complain of pain in his right shoulder, but I cannot infer post-hoc that Petitioner must have received the vaccine on that side. Based on Petitioner's medical records, the instant case does not present a similar situation in which the totality of the evidence outweighs a single outlier, or potentially unreliable, vaccine record.

Petitioner also argues that his affidavit evidence should be considered more persuasive than the written records because it is "consistent, clear, cogent, and compelling." Pet'r Mot. at 6 (citing *Camery*, 42 Fed. Cl. at 391); Pet'r Reply at 2. The affidavits are clear and consistent in that the affiants uniformly recall Petitioner complaining of right shoulder pain on October 4, 2019. But the statements of Mr. Lonzo and Ms. Cruz are less compelling because they only repeat information from Petitioner about the cause of his pain. Ms. Walters' affidavit is better in that respect, but her

---

[6] Petitioner cites the following cases: *Keyes v. Sec'y of Health & Hum. Servs.*, No. 15-0845V, 2016 WL 2606645 (Fed. Cl. Spec. Mstr. Jan. 27, 2016); *Skinner-Smith v. Sec'y of Health & Hum. Servs.*, No. 14-1212V, 2016 WL 3180635 (Fed. Cl. Spec. Mstr. Apr. 27, 2016); *Garrett v. Sec'y of Health & Hum. Servs.*, No. 17-0815V (Fed. Cl. Spec. Mstr. Mar. 15, 2018); *Rafferty v. Sec'y of Health & Hum. Servs.*, No. I 7-1906V, 2018 WL 6520947 (Fed. Cl. Spec. Mstr. Oct. 11, 2018); *Goring v. Sec'y of Health & Hum. Servs.*, No. 16-1458V, 2018 WL 6539219 (Fed. Cl. Spec. Mstr. Oct. 31, 2018); *Capra v. Sec'y of Health & Hum. Servs.*, No. 18-0129V, 2019 WL 3717951 (Fed. Cl. Spec. Mstr. Apr. 26, 2019); *Tellez-Garcia v. Sec'y of Health & Hum. Servs.*, No. 17-816V, 2019 WL 5704796 (Fed. Cl. Spec. Mstr. Oct. 9, 2019); *Kosma v. Sec'y of Health & Hum. Servs.*, No. 21-0538V, 2023 WL 4843301 (Fed. Cl. Spec. Mstr. June 28, 2023); *Axelrod v. Sec'y of Health & Hum. Servs.*, No. 21-0980V, ECF No. 42.

[7] *Tellez-Garcia* is different, in that the petitioner waited seven months before obtaining treatment for her shoulder pain and relied in much larger part on affidavits. *See Tellez-Garcia*, 2019 WL 5704796, at *2. However, a key piece of evidence in that case, absent here, was the live testimony of the vaccine administrator, who admitted that she could have erred in documenting situs. *See id.* at *3. Further, in two cases, there was the added inconsistency of the fact that the vaccine record was edited by unknown parties or pre-populated before the vaccine was even administered. *See Rafferty*, 2018 WL 6520947, at *6; *Kosma*, 2023 WL 4843301, at *5.

supposed recollection of having seen Petitioner receive the vaccine in his right arm was still made nearly two and a half years later.

Petitioner's description of how the pharmacist injected the vaccine into his right arm tattoo is quite vivid. But I afford this statement less weight as compared to the contemporaneous VAR because it was made for the purpose of litigation after Respondent's Rule 4(c) Report had been filed. Nonetheless, even if I were to find that general recollections of Petitioner and his wife constitute preponderance evidence that Petitioner received the vaccine in his right arm, this claim would still fail for failure to prove onset within 48 hours.

### C.    Petitioner Has Not Establish Onset Within 48 Hours By Preponderant Evidence

A Table SIRVA claim requires proof of onset of shoulder pain within 48 hours of vaccination. 42 C.F.R. §§ 100.3(a)(XIV)(B), (c)(10)(ii). Respondent emphasizes that Petitioner delayed nearly four months before seeking treatment, and then repeatedly reported that his pain began on a specific date in *December 2019*. Rule 4(c) Report at 2, 9-10; Resp't Opp'n at 3-5. To counter this argument, Petitioner asserts that his earliest medical records "do not tell the complete story." Pet'r Mot. at 10-15; Pet'r Reply at 3-5. Petitioner instead points to the affidavits describing pain beginning on October 4, 2019 and his September 16, 2020 appointment with Dr. Nguyen. *See* Pet'r Mot. at 10-15.

Petitioner is correct that to establish onset, he is not required to produce a contemporaneous medical record reporting that his pain began during the 48-hour period post-vaccination. *See* Pet'r Mot. at 13 (citing *Miller v. Sec'y of Heath & Hum. Servs.*, No. 20-0959V, 2022 WL 2187589, at *4 (Fed. Cl. Spec. Mstr. April 29, 2022)). Petitioners also "often employ vague temporal language, based on their lack of awareness of the importance for Program purposes of specificity." *Miller*, 2022 WL 2187589, at *4. Similarly, it is common for a SIRVA petitioner to think that the injury will be transient and delay seeking treatment. *See id.* Treatment delay by itself, or lack of specificity in pinpointing onset, does not warrant dismissal.

However, Petitioner's medical records are not merely imprecise, vague, or silent as to onset. Petitioner did not make *any* statement that would suggest that his pain began shortly after vaccination. Instead, Petitioner told Drs. Nguyen, Fehsenfeld, and Chiriboga that he had been having shoulder pain and restricted range of motion since a specific date in December 2019, or (as of the end of April 2020) that he had started feeling pain four months earlier. Ex. 4 at 4; 6; Ex. 5 at 14-15; Ex. 13 at 4. Further, the notes included in Dr. Fehsenfeld's records indicate that Petitioner did not experience pain on December 7, 2019, when he shot rifles and rode an ATV, but after that time "noticed" his right

shoulder hurt when raised on December 23, 2019. Ex. 5 at 11. All of these statements indisputably place onset well outside of the 48-hour period.

Contrary to Petitioner's contentions, he never informed any treater that his pain was present earlier, but then worsened or became more severe in December 2019. *See* Pet'r Mot. at 10-15. The medical records do not corroborate Petitioner's testimony. *See* Pet'r Reply at 4. Even when Petitioner returned to Dr. Nguyen on September 16, 2020, he "attributed" his right shoulder pain and stiffness to the flu vaccine, but apparently did not provide any details as to timing. Ex. 4 at 2. Petitioner's medical records lack any reference to pain beginning immediately after vaccination.

In order to overcome these statements fixing onset in December 2019, Petitioner argues that until he learned about SIRVA, he was not able to report any "inciting event" or connect his symptoms to the vaccination. *See id.* at 10-11. Petitioner analogizes to *Smallwood*, in which the petitioner waited 54 days to seek medical care because he had discounted his injury until he learned about SIRVA through an internet search. *Id.* at 12 (discussing *Smallwood v. Sec'y of Health & Hum. Servs.*, No. 18-291, 2020 WL 2954958, at *10 (Fed. Cl. Spec. Mstr. April 29, 2020)). However, Petitioner does not use his lack of knowledge about SIRVA to only explain a delay in treatment. I do not find it supportive of Petitioner's claim that he further developed his description of onset after he had the specific condition of SIRVA in mind. *See Vashro v. Sec'y of Health & Hum. Servs.*, No. 20-1849V, 2023 WL 6643108, at *3 (Fed. Cl. Spec. Mstr. Sept. 5, 2023)).

Finally, I do not find the affidavit evidence to be sufficiently compelling to outweigh the medical records. The affidavits are not contemporaneous with treatment events, and they are largely formulaic as to what Petitioner told each affiant about the onset of his pain. Petitioner places great importance on the need to leave work early the day after vaccination due to shoulder pain, but the 2019 Employee Attendance Calendar adds additional inconsistencies. It is entirely unclear who created this document and added the "*HDS Half Day Sick" notation on October 4, 2019.[8] Ultimately, I give greater weight to Petitioner's unbiased initial statements to obtain medical care that his pain began without a known cause in December 2019.

---

[8] Additionally, as Respondent points out, Ms. Cruz stated that she entered a note into the "electronic work call records to reflect that Petitioner had left work due to pain in his shoulder," Ex. 7 at 2, yet Petitioner instead presents a handwritten calendar. *See* Rule 4(c) Report at 5. Furthermore, Petitioner asserts that he took vacation or sick leave on December 9, 2019 and December 20, 2019 due to his shoulder pain, *see* Ex. 1 at 2, but these dates are not marked on the 2019 Employee Attendance Calendar.

**Conclusion**

Petitioner has presented insufficient proof to establish an entitlement to compensation for a Table SIRVA, for failure to establish Table onset and/or administration situs. As a result, he cannot obtain compensation for the Table SIRVA injury. Moreover, Petitioner has not alleged a causation-in-fact claim based on a finding that his onset occurred no sooner than two months post-vaccination – and I do not find on this record that such a claim would be tenable. And there remains the problem of vaccine situs as well, and why a vaccination delivered in one arm would cause a neuropathic injury in the other, two or more months later. Thus, transfer of the case for resolution of a non-Table claim would prove futile.

Accordingly, Respondent's motion to dismiss (ECF No. 23) is **GRANTED**. Petitioner's motion for a decision on the record (ECF No. 30) is **DENIED.** In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk shall enter judgment in accordance with this Decision.[9]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[9] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.